The Ohio and Mississippi Railway Company *v.* Dunn.

No. 16,336.

THE OHIO AND MISSISSIPPI RAILWAY COMPANY *v.* DUNN.

INSTRUCTIONS TO JURY.—*Filing.*—*Bill of Exceptions.*—Instructions which are brought into the record by a general bill of exceptions are only required to be filed in and as a part of such bill.

MASTER AND SERVANT.—*Railroad.*—*Incompetent Employe.*—*Negligence.*—*Injury to Fellow-Servant.*—The fact that a fireman, who has occasionally served as engineer in a switch yard, is placed in charge of an engine to do switching, is not sufficient in itself to charge the railroad company with negligence, in an action by a fellow-servant to recover for an injury alleged to have been sustained by reason of the incompetence of such person.

SAME.—*Employment of Servant.*—*Knowledge as to Fitness.*—In an action by a servant to recover for an injury alleged to have been caused by the negligence of a fellow-servant, the fact that the latter had been employed only a few hours prior to the injury and that he had been secured from the same branch of service of another company without inquiry as to his fitness, is not in itself sufficient to charge the defendant company with negligence.

SAME.—*When Case May be Withdrawn From Jury.*—It is the duty of the trial court to take the case from the jury, upon proper request, when any element essential to the finding of the fact in issue has not been proved, or when there is no evidence from which, when undisputed, the jury would be justified in concluding that such fact exists.

From the Floyd Circuit Court.

*E. Barton, C. L. Jewett, H. E. Jewett, W. M. Ramsey, L. Maxwell* and *R. Ramsey,* for appellant.

*J. P. Kelso* and *C. D. Kelso,* for appellee.

HACKNEY, J.—The appellee sued the appellant to recover for personal injuries sustained while coupling cars in making up a train of freight cars in the appellant's switch yards. The complaint places the right of recovery upon three distinct grounds, namely: The negligence of an unskilled engineer, the negligence of an unskilled associate switchman, and maintaining a coupling link so out of repair that it could not be raised

and adjusted to the head of the opposite draw bar.    A
general verdict for the plaintiff constitutes the only find-
ing, and the motion for a new trial presents the only
questions urged in this court.    The principal questions
before us are upon the instructions given and refused,
and as appellee insists that such instructions are not in
the record in a manner to present them for consideration,
we will first pass upon this objection.    It is urged that
though appearing in the bill of exceptions, with a gen-
eral exception reserved to the giving of each charge
given, and to the refusal of each instruction asked, and
the bill showing that those asked were submitted at the
conclusion of the evidence with a proper request that
they be given, they are not in the record for the reason
that it does not appear that such instructions asked and
charges given were filed in the circuit court.    Under the
code and the recognized practice of this State, there are
three methods of making instructions a part of the
record; first, by an order of court; second, by special
exceptions written upon the margin or following each
instruction and signed by the judge; and third, by a
general bill of exceptions.    In the first and second
methods the instructions receive identification from the
filing required by the code.  Sections 533 and 535, R. S.
1881.    *O'Donald* v. *Constant,* 82 Ind. 212; *Supreme
Lodge, etc.,* v. *Johnson,* 78 Ind. 110; *Elliott* v. *Russell,*
92 Ind. 526; *Hadley* v. *Atkinson,* 84 Ind. 64; *Burk* v.
*Andis,* 98 Ind. 59; *Eslinger* v. *East,* 100 Ind. 434; *Graeter*
v. *State,* 105 Ind. 271; *Ft. Wayne, etc., R. W. Co.* v.
*Beyerle,* 110 Ind. 100; *Louisville, etc., R. W. Co.* v.
*Wright,* 115 Ind. 378; *Landwerlen* v. *Wheeler,* 106 Ind.
523; *Olds* v. *Deckman,* 98 Ind. 162; *Blount* v. *Rick,* 107
Ind. 238; *Lower* v. *Franks,* 115 Ind. 334.    In compliance
with those sections of the statute the instructions are

filed "as a part of the record," and by such means become "a part of the record."

In no one of the cases cited, and in no other that has fallen under our observation, has it been held that instructions may not be carried into the record by a bill of exceptions properly made, tendered, signed and filed, as required by section 629, R. S. 1881.

This section relates to all matters not otherwise properly made a part of the record, and when complied with, it is expressly provided that they "shall be a part of the record."

In some of the cases above cited the decisions are made with express reference to sections 533 and 535, *supra*, while in others the distinction is not made to appear.

The case of *Enslinger* v. *East, supra*, is one of the latter class, and the case of *Graeter* v. *State, supra*, states the erroneous citation of section 1849, R. S. 1881, in *Enslinger* v. *East, supra*, and cites, instead, section 329, R. S. 1881.

With this light upon the case of *Enslinger* v. *East, supra*, it is plain that the filing there referred to was that required by the last cited section of the statute which relates to the presentation and filing of the instructions in and as a part of the bill of exceptions.

In *Burk* v. *Andis, supra*, it was held that instructions in a formal bill of exceptions, signed by the judge and thus made a part of the record, were before this court.

In *Hadley* v. *Atkinson, supra*, it was clearly intimated that this method of making instructions a part of the record was sufficient.

No one of the methods suggested for bringing the instructions into the record is exclusive of the other methods. *Plank* v. *Jackson*, 128 Ind. 424; Elliott's App. Proced., section 792, and authorities cited.

We conclude, therefore, that the instructions in the transcript are properly a part of the record.

The first negligence alleged was in placing the engine in charge of a fireman who was inexperienced and incompetent for such service. The injury to the appellee's hand was alleged to have been sustained in having it caught and held between the drawbars of the foremost of several cars being pushed by the engine, and the car desired to be coupled into the train. The omission of duty alleged against the engineer was that he "did not slow up said train as it approached and struck the said car plaintiff was attempting to couple, but caused it to back more after he was notified to stop the same," and until it struck other cars standing on the track.

There is no question but that the appellee and the engineer were fellow-servants. The burden, therefore, rested upon the appellee, as to this element of the case, to establish, by a preponderance of the evidence, that the engineer was incompetent; that the injuries were caused or aggravated by the incompetency of the engineer; the absence of contributory negligence and of knowledge of such incompetency, as well as the presence of knowledge by the company of such incompetency. See *Evansville, etc., R. R. Co.* v. *Duel*, 134 Ind. 156.

The appellant's first contention is that the evidence does not establish either that the engineer was unskillful or that the injury complained of was due to any lack of skill on the part of the engineer. It is conceded that one Coy was in charge of the engine, as engineer, at the time of the occurrence; that he had not been regularly engaged as an engineer, but had been engaged as a locomotive fireman, and while he had never run a locomotive in a regular way upon the road, he had done so on extra occasions, in the switch yard, during the year of his service while Dunn was a switchman.

It further appears that firemen are often qualified to serve as engineers before they become regular engineers. These are the facts shown by the evidence, and constitute the summary of the evidence made by appellee's counsel in their brief. Considering alone the question of Coy's competency to serve as an engineer in the work in which he was engaged at the time he was placed in charge of the locomotives, we have no testimony in addition to the facts above stated. Are such facts sufficient to charge the appellant with negligence in placing Coy in charge of the engine?

It was said by this court in *Louisville, etc., R. W. Co.* v. *Sandford, Admx.*, 117 Ind. 265, that "all the authorities agree that negligence on the part of the employer is not to be presumed, and that it rests on the plaintiff to aver and prove every fact essential to the existence of actionable negligence. *Riest* v. *City of Goshen*, 42 Ind. 339; *Pennsylvania Co.* v. *Whitcomb*, 111 Ind. 212; *Summerhays* v. *Kansas Pacific R. W. Co.*, 2 Col. 484; *Mobile, etc., R. R. Co.* v. *Thomas*, 42 Ala. 672; *State* v. *Philadelphia, etc., R. R. Co.*, 60 Md. 555; *Davis* v. *Detroit, etc., R. R. Co.*, 20 Mich. 105; *The Gladiolus*, 21 Fed. Rep. 417; *Cummings* v. *Nat'l Furnace Co.*, 60 Wis. 603; *Belair* v. *Chicago, etc., R. R. Co.*, 43 Iowa, 662." The evidence does not show that the hazards connected with making up freight trains in a switch yard require more than ordinary skill of an engineer, and not only does the contrary presumption arise from the burden resting upon the plaintiff, but we assume that where the speed of general transportation is not required, where the dangers incident to the meeting and passing of other trains operated at a high rate of speed are not incurred, where the lives of passengers and of persons using highway crossings are not imperiled, and where the large variety of risks from defective rails, bridges and machinery are not

encountered, no special skill is required from an engineer. Coy's skill as a fireman of a locomotive, and his long service in that capacity, with his opportunities to observe and learn the duties of an engineer, and how to discharge them, are not questioned; his intelligence, faithfulness, sobriety and industry are not denied, nor does the evidence disclose a single act of negligence on his part prior to his assignment to the duties of extra engineer on other occasions or the occasion complained of. In the discharge of the duties of engineer it is conceded that he had had some experience.

The circumstances do not, in our opinion, establish that he did not, when thus assigned to duty as an engineer, possess the requisite experience and skill for the proper discharge of that duty.

In *Texas, etc., R. R. Co.* v. *Berry*, 67 Tex. 238, it was held that one having served a reasonable time as fireman of a locomotive, and having occasionally had charge of such locomotive as engineer, was not necessarily unskillful and incompetent as an engineer. No position affords better opportunities to learn locomotive engineering than that of a fireman. Engineers, like those called to other positions of responsibility, must have their early experiences. Railway companies could not long operate if only long experienced engineers could be employed without liability for negligence, and opportunities for promotion would be denied to the beginner, however intelligent, industrious, apt and observing.

When it is remembered that the burden rested upon the appellee to show that Coy was not sufficiently skilled for the duties of engineer of a locomotive engaged in making up freight trains, and when we observe that special skill is not shown to have been required, and that beyond the claim of but a limited experience his capacity is not questioned, we feel that to hold the case made out

would require not only extraordinary care in selecting railway engineers for ordinary service, but would practically cast the burden upon the company to show the skill of the engineer.

The case of *Evansville, etc., R. R. Co.* v. *Guyton*, 115 Ind. 450, is urged against our conclusion in this case, but it will be observed that the cases are clearly distinguishable in the material element that in the case cited the service of operating a wild train was held to have required a conductor with more than ordinary skill, and that "there was some testimony from which the jury may have found that he was not possessed of sufficient familiarity with the time cards and with the technical language of train orders, and was not sufficiently quick of apprehension to be able to construe and interpret an order in connection with a time card, so as to be competent to act as the conductor of a wild train."

The alleged negligence of the associate switchman involves, first, an inquiry as to the evidence of the appellee upon the allegation of the company's negligence in employing him. He had been engaged during the afternoon, and his service began at six o'clock that evening, less than one hour before the occurrence complained of. His previous employment had been with the Chesapeake, Ohio and Southwestern Railway Company, in the city where the appellee was employed, and the most favorable view for the appellee of the evidence of negligence in employing him is that given by Edward Gore, the yardmaster for said last named company. It is as follows: Ealy, appellant's yardmaster, asked Gore for a man "and said he was short a man, and I told him I had one that he could have that I was done with, and he said 'all right; I will take him and probably give him a regular job.'"

Considering this evidence alone, does it raise the pre-

sumption of negligence in placing the man employed in the service of switchman?

Again, we are confronted with the rule that the burden rests upon the complaining party to establish the charge of negligence, and that negligence will not, in the first instance, be presumed. *Louisville, etc., R. W. Co.* v. *Sandford, Admx., supra,* and authorities there cited, and, also, *Davis* v. *Detroit, etc., R. R. Co.,* 20 Mich. 105, and *Summerhays* v. *Kansas, etc., R. W. Co.,* 20 Am. Ry. Rep. 359.

This rule requires us to indulge the presumption of due care until the evidence overthrows that presumption and establishes affirmatively the absence of reasonable care. The mere absence of evidence of care does not lend strength to the charge of negligence. Any departure from this rule will have the effect to abrogate the rule and to require of the employer an affirmative showing of diligence. In the ordinary transactions of individuals this rule is maintained, and under it the presumption in favor of care, good faith, and diligence is indulged, and we observe no reason for departing from it where a railroad company is the master and its servant is the unfortunate claimant for damages.

Indulging this presumption, and there being no evidence that the switchman had not had experience in, and acquaintance with, the service in which he was employed, or that the company did not test his knowledge of the service and acquaintance with its details, and his ability to perform such service, we must conclude that negligence was not shown in this respect.

As applicable to the employment of both the engineer and switchman, it will not do to say that negligence contributing to or producing the injurious results complained of should control the question of negligence in making the employment, for the most skillful may be

negligent, and it is not the negligence or failure to employ skill in the performance of duty subsequent to the engagement that determines the care of the employer to ascertain the degree of skill possessed at the time the servant is taken into the service. The questions here under consideration were decided as follows in the case of *Summerhays* v. *Kansas, etc., R. W. Co., supra*. "The company does not occupy the position of an insurer against the perils to which its employes may be exposed by reason of their employment. Its duty is discharged when competent fellow-servants are engaged. A single omission to exercise care by a fellow-servant (and that in the instance complained of) can not be taken in an action brought by another against the company as proof of the latter's liability. To give the co-employe a status in court, he must aver that the company whose liability he is seeking to establish furnished incompetent fellow-servants, or continued such men in its service after having notice of the same. In other words, he must bring his case within the well known exceptions which attach to the general rule, and which declares the master's exemption from liability for the negligent conduct of the co-employe in the same service. * * We take it to be the law that in a suit brought by a railroad employe against the company for damages caused by the alleged unskillfulness or negligence of another employe of the same company, the defendants are entitled to the presumption that they exercised due care in the employment of the person charged with unskillfulness or negligence, and that it had no knowledge of the defects of capacity or character imputed." See also *Davis* v. *Detroit, etc., R. R. Co., supra*.

Upon the theory that there was not sufficient evidence to establish the charges of negligence in employing the two servants, the engineer and switchman, the appellant

asked, and the court refused, an instruction that said charges were not sustained, and should be disregarded. There is no question as to the form of the instruction, but the appellee insists that its refusal was proper because the court, in other charges, fairly submitted to the jury the determination of the question of negligence in employing these two men, and because it was not the privilege of the court to take the question from the jury.

If there was evidence from which, by any reasonable construction, negligence could have been inferred, the court would have invaded the province of the jury in giving the charge refused; but, as we have held, there was no such evidence, and it was the duty of the court to give the instruction.

In *Faris* v. *Hoberg*, 134 Ind. 269, we reviewed many of the cases and reaffirmed the right and the duty of the trial court to take the question from the jury (upon proper request and instruction tendered) when any element essential to the finding of the fact in issue has not been proven, or there is not evidence of such fact from which, when undisputed, the jury would be justified in concluding that such fact existed. We are, therefore, of opinion that the trial court should have given the instruction so refused.

The evidence is unsatisfactory in showing either that the injury was the result of negligence of employes of the company or that appellee was free from contributory negligence, and it is a subject of serious doubt whether, under the evidence, the stiff link complained of is not one of the necessary incidents of railroading, and one of the hazards assumed. However, we do not pass upon that branch of the case, since concluding that a new trial should have been granted for the error above indicated.

The judgment of the circuit court is reversed, with in-

structions to sustain the appellant's motion for a new trial.

Filed March 7, 1894.

### ON PETITION FOR A REHEARING.

HACKNEY, J.—Counsel for the appellee have presented an earnest and able petition for a rehearing, to which we have given careful consideration.

It is insisted that in adopting imperfectly the method of excepting to instructions, as provided by section 535, R. S. 1881, the appellant was precluded from employing another method of reserving exceptions to such instructions, namely, by a formal bill of exceptions. This contention rests upon the doctrine that where two or more remedies are given by the law for the enforcement of a right, the election of one of such remedies is an exclusion of any other, as where the remedy employed is by suit to review the right of appeal is thereby cut off.

This doctrine has no application to the mere incidents of practice, but applies to remedies, and has for its object the securing of a final determination of a controversy by one decision and the avoidance of vexatious litigation where one remedy is exhausted and another is then employed for the enforcement of but one right of action.

With the practice of reserving exceptions to instructions, and making them a part of the record, section 534, R. S. 1881, has nothing to do, as that section was designed to enable the parties to learn, before arguing a cause, what instructions would be given, and to permit such instructions to be read as a part of the arguments.

It is further complained that in our holding that the trial court should have given the instruction that there was a failure of proof upon two of the elements of negligence alleged, we stand in conflict with the holding in

*Wabash, etc., R. W. Co.* v. *Morgan*, 132 Ind. 430, where an instruction was asked to the effect that there was a failure of proof to show incompetency and negligence on the part of an engineer, etc., which instruction was refused and the refusal sustained.   In that case the evidence is not discussed with relation to the instruction, and we are not enabled to say that there was a failure of proof upon the question to which the instruction was addressed.

The suggestion in that case that the instruction was properly refused, under the averments of the complaint, and that the appellee might have recovered by reason of defects in the engine, can certainly have no application to the question as to whether an instruction was proper, taking an element of the case from the jury because of a failure of evidence upon such element.   If that case could be said to conflict with the proposition, then where there is a failure of evidence upon an element of a case, the court may take such element from the jury and thereby prevent a hodge-podge verdict, we would not hesitate to depart from it.

Upon the remaining questions discussed by counsel, we have said all that we deem necessary in the original opinion.

The petition for a rehearing is overruled.

Filed May 17, 1894.