No. 1,412.

## Chicago and Eastern Illinois Railroad Company *v.* Beatty, Admr.

Pleading.—*Complaint.*—*Personal Injury of Servant.*—*Incompetent Co-employe.*—An allegation, in a complaint for injuries sustained by the negligence of a fellow-servant in charge of a railroad engine, that such fellow-servant "was not a locomotive engineer, and that he was incompetent," is equivalent to the charge that he was unfit and unable to do properly what was required of him to run and operate said locomotive, is sufficient to withstand a demurrer.

Same.—*Complaint.*—*Incompetent Co-employe.*—*Proximate Cause of Injury.*—That the complaint is sufficient as showing that the injury was the result of the incompetency of the fellow-servant, who had charge of the locomotive, see opinion.

Master and Servant.—*Sufficiency of Evidence on Appeal.*—*Incompetent Co-employe.*—*Damages.*—That the evidence is sufficient to sustain the verdict for plaintiff in an action for damages sustained by reason of the incompetency of a co-employe, see opinion.

Same.—*Duty of Master to Employ None But Competent Servants.*—*Duty of Employe.*—An employe has the right to presume that his employer will employ none but competent co-employes; and it is not a servant's duty, unless there is something to put him on inquiry as to his co-employe's fitness, to institute an inquiry as to his qualifications.

Same.—*Knowledge of Co-servant's Incompetency.*—*Assumption of Risk.*—One who knows, or by the exercise of reasonable diligence might have known, of the incompetency of a co-employe, and with such knowledge continues in service with him, assumes all risk incident to such incompetency.

Dissenting opinions by Reinhard, C. J., and by Ross, J.

From the Clay Circuit Court.

*W. H. Lyford, W. J. Calhoun* and *G. A. Knight,* for appellant.

*J. A. McNutt* and *A. Payne,* for appellee.

DAVIS, J.—This action was brought by the appellee as administrator of the estate of Jasper Robinson, deceased, against the appellant, to recover damages for the death of his intestate, caused by the alleged negligence of the appellant. A trial was had by a jury, which resulted in a verdict and a judgment in favor of appellee for $3,000.00.

The following errors are assigned in this court:

1. That the court erred in overruling appellant's demurrer to the complaint.

2. That the court erred in overruling appellant's motion for a new trial.

3. That the complaint does not state facts sufficient to constitute a cause of action.

The complaint alleges, in substance, that the appellant was, on December 26, 1892, operating a line of railroad from Brazil, Indiana, to Chicago, Illinois; that appellee's intestate, one Jasper Robinson, was employed in and about appellant's round-house, located at Brazil, his duties being to assist in cleaning and wiping locomotives placed in the round-house. That appellant's locomotives were transported to and from the round-house, over a track leading from main line into the round-house, and when the engines were cleaned, repaired, and ready for use, they were run over the same track back to the main line. The entrance into the round-house through which the locomotives passed was only of sufficient width to admit of such passage. On either side of this entrance wooden posts were placed, to which doors were hung to

close up the entrance after a locomotive had passed through.

It is further alleged that on the morning of December 26, 1892, a locomotive was brought out of this round-house, in charge of one Aaron Runyan, to be taken over the side-track to the main track, and there to be delivered to the regular engineer. It is also alleged that said Runyan ran the locomotive out of the round-house a short distance, and while appellee's intestate, Robinson, was closing the door to the entrance through which the locomotive had just come, as it was a part of his duty to do, said Runyan "negligently, carelessly, and suddenly started and ran said locomotive back towards and into said entrance, and over, against and upon the said plaintiff's (appellee's) intestate, bruising, wounding, and injuring him in such manner that he died in a few moments thereafter from said injuries."

It is also alleged that Robinson had no notice of Runyan's intention to run the engine back into the round-house, but supposed it was to proceed on its way to the main line; that no notice was given him, by ringing bell, blowing whistle, or otherwise, that said engine was about to return to the house; that it was not yet daylight, and there was no light on the end of the tender of the locomotive, so as to enable Robinson to see the approach of the engine; and that he was injured and killed in the manner aforesaid, without any fault on his part.

It is further alleged that Robinson was "injured in the manner aforesaid by reason of the negligence and the carelessness of said defendant (the appellant) in this: That said defendant suffered and permitted said Runyan, who was not a locomotive engineer, to have charge of, manage, control and operate said locomotive; that said Runyan being incompetent to run and operate said

locomotive, which said defendant knew, or might and ought to have known."

It is further averred that Robinson had been in the employment of said defendant but a short time prior to his death, and had no knowledge of Runyan's incompetency to run said locomotive ; and that the intestate left a. widow, and an unborn child, now living, who were dependent on the deceased for support. Wherefore damages are demanded, etc., etc.

Counsel for appellant contend that the complaint is insufficient, for the reason that it is not alleged in specific terms wherein and why Runyan was incompetent. It is alleged that Runyan was not a locomotive engineer, and that he was incompetent to run and operate said locomotive. The demurrer admits he was incompetent. Therefore he was unfit and unable to do properly what was required of him. (See Webster's, and also Standard, Dictionary.) The allegation that Runyan was not a locomotive engineer, and that he was incompetent, is equivalent to the charge that he was unfit and unable to do properly what was required of him to run and operate said locomotive, and is sufficient on this question to withstand the demurrer.

It is next insisted that the negligent act Runyan did, which caused the injury, is not shown to have been the result of the fact that he was incompetent to run and operate said locomotive. The wording of the complaint in this respect could be improved, but when all the allegations are construed together it appears that said Robinson was injured by reason of the fact that Runyan, who was not a locomotive engineer, and who was incompetent to run and operate the locomotive, was in charge of said locomotive. It clearly appears that the negligence of an incompetent employe was the proximate cause of the injury. *Ohio, etc., R. W. Co.* v.

*Collarn,* 73 Ind. 261, 268; *Lake Shore, etc., R. W. Co.* v. *Stupak,* 123 Ind. 210, 222.

In *Indianapolis, etc., R. W. Co.* v. *Johnson,* 102 Ind. 354, Judge Elliott states the rule as follows: "It is well settled that a master, who negligently employs, or who wrongfully retains in his employment, incompetent servants, is responsible to a servant injured by the negligence of the incompetent fellow-servant."

In the light of the authorities cited the complaint, in our opinion, is sufficient.

Counsel for appellant next urge that the verdict of the jury is not sustained by sufficient evidence; that it is contrary to the evidence, and that it is contrary to law.

It is first insisted that there is no evidence in the record fairly tending to prove that the deceased died prior to the commencement of the suit, or that his death was caused by injuries received in the accident referred to.

The evidence shows that Robinson commenced working at appellant's round-house in September, 1892, and that the accident happened on the 26th of December, 1892; that he was injured about the middle part of the body, as shown by the blood; that he did not speak and could not walk; that they carried him away; that he suffered a great deal; that he had been working there four months before he was killed. Counsel for appellant, in one question at least, assumed that he was killed. The facts and circumstances in relation to the manner in which he was injured were sufficient to authorize the inference by the jury that he died as the result of his injuries.

It is also insisted that there is no evidence to support the allegation that he was injured by the engine.

Robinson was employed as a wiper. One of the duties of a wiper was to close the doors of the round-

house as soon as the engine going out was clear of the doors, in order to exclude the cold, so that the water in the other engines standing in the round-house would not freeze; that this was a cold morning, and when this engine, in charge of Runyan, passed out Robinson proceeded in the line of his duty to close the double heavy doors; that when the engine had gone from four to six feet Runyan reversed it to return into the round-house for the purpose of lighting the headlight; that as this was done Robinson was seen on the track at the doors right in front of the engine, and as a co-employe hallooed to Runyan to stop the engine Robinson was seen to fall across the tracks. Whether he was crushed between the engine and doors is not clear, but the inference is reasonable that he was injured by the engine.

It is also insisted that there is no evidence supporting the allegation that the deceased had no notice that the engine was to be moved forward toward the round-house. There is no direct evidence on this subject. Runyan testified that before he reversed the engine and changed its motion he put his head out of the cab window and hallooed "Look out." Whether the deceased heard this warning, conceding it was given, we do not know. This was about five o'clock in the morning. It was not yet daylight. The deceased had his lantern. Runyan was running the engine back to light the headlight. Robinson had unfastened one of the doors and had it swung around to within eight or ten inches of the track. Runyan also testified that he did not know that Robinson or any one else was closing the doors or was in front of the engine. He says that he did not blow any whistle or ring any bell, and he does not say how loud he spoke when he said "Look out." In the light of all the circumstances shown by the evidence, we cannot say that the jury were not authorized in drawing the infer-

ence that the deceased had no notice that the engine was to be moved forward toward him.

It is next contended that there is no evidence in the record showing that Runyan was incompetent, or that the accident occurred on account of his incompentency, or that appellant knew he was incompetent, or that if he was incompetent, Robinson did not know it.

It may be conceded, as stated by counsel for appellant, that so far as the employment of Runyan is concerned, "all that is required, is that reasonable care should be used in selecting a man for that work."

There is evidence in the record tending to prove that Runyan and Robinson were both employed as wipers, and that their duties were to clean the engines, open and close the doors of the round-house, turn the turntable, take water and coal, and give the engines sand; that Osborne, the night hostler, had control of the round-house, and that the wipers were under his command, and that it was their duty to obey his directions; that Runyan had some experience as a brakeman, and also as a wiper, and had previously, in other places, for a short time, acted as a hostler in running engines on switches and to and from the round-house, but had never had any experience as a fireman, or as an engineer, except as herein indicated; that Runyan and Robinson worked in the round-house together, from the 9th to the 26th of December, and that during the week preceding the accident, under the direction of the hostler, Runyan at times acted as hostler, in moving and handling trains from the round-house to the main track. The appellee introduced evidence tending to prove that in order to qualify a man to handle engines, in taking them back and forth from the round-house, he should have good judgment, and also two years experience as a fireman, under the direction and supervision of a competent en-

gineer. The evidence, when construed in the most favorable light for appellee, tends to prove that Runyan was not competent for the work in which he was engaged at the time of the accident; that appellant had not exercised reasonable care in selecting him to do that work, and that the injury resulted through his incompetency

The fact, if essential that it should be proven by appellee, that Robinson did not know that Runyan was incompetent can only be determined by inference. Robinson had the right to presume that the appellant would entrust the handling of their engines to none but competent persons and would not increase the perils and dangers of his employment by placing inexperienced and incompetent persons, without notice to him, in charge of its locomotives. It was not his duty, unless there was something to put him on inquiry as to Runyan's fitness, to institute any inquiry as to his qualifications. *Pennsylvania Co.* v. *Roney, Admx.*, 89 Ind. 453. If he knew, or by the exercise of reasonable care might have known, of the incompetency of Runyan, and if with such knowledge or means of knowledge he remained in appellant's service, he would be regarded as having assumed all the risks incident to the negligence of such incompetent co-employe, unless a reasonable excuse for remaining in the service was shown. *Indiana, etc., R. W. Co.* v. *Dailey*, 110 Ind. 75; *Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1, (5); *Chicago, etc., R. W. Co.* v. *Champion*, 9 Ind. App. 510.

Among other instructions the court, at the request of the appellant, gave the following:

"If Robinson, the deceased, knew that Runyan was incompetent to act as an engineer, or if he had equal opportunities with the defendant to know of his incompetency and he voluntarily continued in the service

of the defendant without complaint or objection, then I instruct you that the dangers arising from the incompetency of Runyan were risks assumed by Robinson, and if he was injured and killed by said Runyan's incompetency to manage and operate a locomotive, the plaintiff cannot recover in this action."

Under the facts and circumstances disclosed by the evidence in the record, when construed most favorably in behalf of appellee, as under the rule is required in this court, we cannot say, in the light of the instruction and the verdict of the jury, that Robinson knew, or by the exercise of ordinary care should have known, that Runyan was incompetent to manage and operate the engine.

It does not appear that Robinson had any knowledge or information putting him on inquiry as to the competency or incompetency of Runyan. *Pennsylvania Co. v. Roney, Admx., supra.* In the absence of knowledge or information on the subject Robinson had the right to assume when Runyan was selected to manage and operate the engine that he was competent to perform that service.

Runyan testified that for a week or two prior to the accident he was under the direction of the hostler, acting as an assistant hostler; that the principal part of his time was taken up in the performance of the duties of a hostler, but that he wiped engines when he had time.

Whether the act of Osborne in assigning Runyan to perform the duties of a hostler was within the scope of his authority, is not questioned. Granting that the act of Osborne was the act of the company, the conduct of Runyan on this occasion, with the circumstances surrounding it, were sufficient to warrant the jury in the inference that there was want of ordinary care in selecting him to manage and operate the engine. *Evans-*

ville, etc., R. R. Co. v. Guyton, 115 Ind. 450, 454;
Pennsylvania Co. v. Roney, Admx., supra. As we
have seen, the facts and circumstances are not such as
would warrant this court, in the face of the verdict of
the jury, in saying that Robinson was bound to take
notice of Runyan's incompetency. Although the evi-
dence on this question, as on some others in the case,
is neither clear nor satisfactory, we would not be justi-
fied in disturbing the verdict on this ground.

When all the instructions are considered and con-
strued together as an entirety, they correctly state the
law applicable to the case. We have considered all the
questions discussed by counsel for appellant.

There is no error in the record, so far as discussed by
counsel.

Judgment affirmed.

Filed May 3, 1895; petition for rehearing overruled November 26,
1895.

## DISSENTING OPINION.

REINHARD, C. J.—I very much regret my inability to
concur in the conclusion arrived at by the majority of
the court in the prevailing opinion. In my view there
are several well marked errors for which the judgment
should be reversed.

The gist of the negligence and the proximate cause
of the injury charged in the complaint are contained in
the averments that Runyan "negligently, carelessly
and suddenly started, and ran said locomotive back
towards and into said entrance, and over, against and
upon the said plaintiff's intestate, bruising, wounding
and injuring him in such manner that he died in a few
minutes thereafter from said injuries;" and possibly in
the further averment, in connection with the foregoing,
that there was no light on the end of the tender or loco-

motive, and that no notice was given Robinson by the ringing of the bell, blowing of the whistle or otherwise.

Ordinarily, the negligence of a fellow-servant to another servant in the same line of employment from which injury results to the latter is not sufficient to make the master liable in damages. The complaint in this case would not be good if it were not made to appear in some way that the appellant was guilty of negligence in connection with the negligent act of Runyan. Appellee's counsel attempt to make the complaint meet this requirement by charging that Runyan was an incompetent servant, and by connecting the alleged negligent act of running the engine back to the entrance without signals with the incompetence of Runyan. It is not charged directly, however, that the negligent act of Runyan just mentioned was the result of his want of knowledge in the machinery or operation of the engine, or his lack of skill in handling it, or because of insufficient experience on his part, or mental or physical disability, insobriety, habitual recklessness or other elements that may enter into the question of incompetency. Assuming, however, that the complaint was good without such an averment, it still remains to be seen whether the evidence is sufficient to connect the alleged proximate cause of the injury, to-wit: the negligence of running the engine back to the entrance without signals, with the alleged negligence of the master in employing and retaining an incompetent servant to run the engine.

It was unquestionably the duty of the appellant to employ some one with sufficient knowledge and experience to perform the duties of "hostler," which included the capacity to run the engine between the round-house and the main track so as to avoid all unnecessary accidents. The presumption is that the appellant dis-

charged this duty, and the burden of showing the contrary was upon the appellee. It was incumbent upon him to show, therefore, that Robinson was incompetent to discharge the duties of a hostler, and that by reason of such incompetency the appellee's intestate was killed as alleged in the complaint. Nor is this all. The appellee was further required to prove that the appellant knowingly employed or retained such incompetent servant and that the deceased was ignorant of the fact that the servant was incompetent.

Originally, Runyan was employed, it seems, as an engine wiper, but ultimately he assumed and performed the work of hostler, whose duty it was to take charge of incoming engines from the main track, to have the wipers clean the engines, wipe them and see that the engines went back at the right time.

The only evidence of incompetency relied upon is that Runyan was not a regular engineer, or had not had any experience as a regular engineer or fireman. But it requires no professional engineer to be a competent hostler. That he had not sufficient experience and skill as a hostler, is not claimed or proved by any evidence. On the contrary, the uncontradicted evidence shows that Runyan had had experience as a hostler, wiper and brakeman, and there is nothing to show that he had not discharged his duties in these different employments in an acceptable manner. No complaint seems to have been made by Robinson or anyone else of the manner in which Runyan discharged the duties of a hostler prior to the occurrence of the injury. The only act of negligence with which he is charged is the act which resulted in the alleged killing of Robinson. But I do not think this was any evidence of Runyan's incompetency, which cannot be inferred from the single act of negligence from which the injury resulted. Wood Master

and Servant (2 ed.), section 419, p. 821; *Id.*, sec. 432.

Moreover, the evidence totally fails to show or tend to show that if Runyan was incompetent the appellant had any knowledge or notice thereof, and that Robinson was ignorant of the same. The mere fact that an injury has been sustained as the result of a negligent act of a servant is not enough of itself to impute negligence to the master either in his employment or retention. *Baulec, Admx.*, v. *New York, etc., R. R. Co.*, 59 N. Y. 356; *Moss* v. *Pacific Railroad Co.*, 49 Mo. 167; *Davis* v. *Detroit, etc., R. R. Co.*, 20 Mich. 105.

As already indicated, the fact that Runyan was not a regular engineer was no proof whatever of the fact that he was incompetent to perform the duties of a hostler. The degree of care required of the master in the selection and retention of servants varies, of course, with the exigencies of the particular services required, and I cannot understand what right the jury had to say that the appellant was required to employ a regular engineer to take the engines from the main track to the roundhouse and back, or that the fact that Runyan was not a regular engineer rendered him incompetent as a hostler.

There is then, in my opinion, no evidence of the incompetency of Runyan, and of the fact that the appellant had knowledge of such incompetency at the time of the injury.

Moreover, the evidence totally fails to show or tend to show that Robinson was ignorant of the incompetency of Runyan if the latter was incompetent. Indeed, it tends to show the very opposite. Surely, if Robinson knew that Runyan was without experience or capacity in the line of employment in which he was engaged, Runyan assumed the risk of all injury that might result to him from the same if he continued in the service

with Runyan acting as hostler. The evidence shows that Robinson was with Runyan while the latter was acting as hostler and wiper for the appellant, and must, therefore, have had some knowledge of Runyan's fitness and capacity as a hostler.

It is true that Robinson was warranted in assuming that the appellant had exercised due care in trusting the duties of hostler to Runyan, and upon that hypothesis he had a right to act until the contrary was made known to him. But when the facts show, as they do in the present case, that both the master and the servant have equal knowledge of the fitness or unfitness of a fellow-servant, the servant who is subsequently injured takes the risk, unless the employer undertakes to give special direction, the proof of which devolves upon the servant alleging the same. *Davis* v. *Detroit, etc., R. R. Co.*, *supra*; *Haskin, Admr.*, v. *New York Cent. R. R. Co.*, 65 Barb. 129.

Again, I do not think it has been shown that the incompetency of Runyan was the proximate cause of the death of Robinson. It may have been quite true that Runyan upon this particular occasion was negligent, but this negligence may have been perfectly consistent with his competency to perform the work in which he was engaged. Nothing is better known than that even competent engineers occasionally omit to give the required signals, and are guilty of other acts of negligence. If this were sufficient proof from which a jury has a right to infer incompetency, there is, perhaps, not an engineer in the service who might not be thus proved incompetent.

There was in this case not a scintilla of evidence to show that the negligence of Runyan on this particular occasion was the result of any incompetency on his part.

Appellee relies largely upon the case of *Ohio, etc., R.*

*W. Co.* v. *Collarn*, 73 Ind. 261, and insists that the facts of that case are almost identical with those in the case before us, and that the ruling in that case supports the appellee's contention here. I do not so regard the case cited. It was there shown that the railroad company was guilty of negligence in permitting its orders respecting the sounding of the whistle and ringing of the bell to be violated by its engineers and retaining such engineers in its employment after notice of the practice of abandoning their engines to the firemen, which led to the placing of the engine in question in the hands of a careless fireman who was incompetent to manage the same, whereby the injury to the plaintiff occurred. In that case it was very properly held that the company was negligent in suffering its engine to be run by means of the careless and incompetent person so placed in charge of it. There is no evidence of that character in the case before us.

The evidence is defective in another particular. There is nothing to show how Robinson was killed, or what he was doing at the time, or whether or not he was in the line of his duty, or was using due care to avoid the injury. There must be affirmative evidence to show that the deceased was free from contributory fault before the appellee can recover. Indeed, the presumption in such cases is that the fault was *prima facie* that of the deceased. *Pittsburgh, etc., R. W. Co.* v. *Bennett*, 9 Ind. App. 92.

"In such a case it is not enough to show that an accident happened and that death or injury resulted therefrom. Negligence is not to be presumed from the fact of an occurrence like that involved in the present case, the statement of which suggests its anomalous, exceptional and extraordinary character. This is not, therefore, a case in which mere proof of the accident casts

upon the defendant the burden of showing the real cause of the injury. * * * Where an event takes place, the real cause of which cannot be traced, or is at least not apparent, it ordinarily belongs to that class of occurrences which are designated as purely accidental; and, in a case like this, where the plaintiff asserts negligence, he must show enough to exclude the case from the class of accidental occurrences." *Wabash, etc., R. W. Co.* v. *Locke*, 112 Ind. 404, 410.

Railroad companies are not required to insure the lives of their employes or to make accidents impossible, and there is no presumption against them except in case where the relation of carrier and passenger obtains. In the latter case proof of an injury usually establishes a *prima facie* case of negligence in favor of the passenger. This rule, it is needless to say, has no application to a case of negligence between master and servant.

Runyan testified that on the morning of the accident he took the engine out of the house; that he had taken it about ten feet from the door when one Welch came along by the engine and asked why he did not light the headlight; that he told Welch he thought it was light enough without it, but if he wanted it lighted he (Runyan) would run the engine back and light it; that he then reversed the lever of the engine, but before he did so he put his head out of the window and called, "Look out!" and then moved the engine about ten or twelve feet, when he heard some one halloo, and then backed the engine in the opposite direction; that he then got down from the engine and heard some one in front of the engine and thought Robinson was hurt, for he "kind of recognized his face." He stated on cross-examination that he started the engine back for the purpose of lighting the headlight, and that Robinson had

partly closed the door and that the engine struck the door.

Welch testified that he heard somebody and "hallooed to the fellow on the engine;" that immediately afterward he found Robinson lying between the tracks with his head toward the door and his feet toward the engine; that there was blood on the ground where he lay, and that he was carried into the round-house.

Appellee contends, and the majority of the court hold, that this evidence was sufficient to authorize the jury to draw the inference that Robinson was struck by the engine. Conceding this to be true, is there anything in this evidence to show the freedom of the deceased from contributory negligence? If so, I have not been able to discover it. The evidence being absolutely silent upon the subject, there can be no inference that the deceased was free from contributory fault.

The judgment should be reversed.

Ross, J., concurs in the opinion of REINHARD, J.
Filed May 3, 1895.


DISSENTING OPINION ON PETITION FOR REHEARING.

Ross, J.—The appellant petitions for a rehearing, insisting first, that the court erred in holding that the evidence was sufficient to sustain the verdict, and second, that the court erred in holding that the evidence establishes the cause of action charged in the complaint.

The theory upon which the complaint, the material allegations of which are set out in the original opinion, proceeds is that appellant employed an incompetent servant and that as a result of the incompetency of said servant, the decedent, who was also an employe of appellant, was injured. The facts alleged show the decedent and Runyan to have been fellow-servants. For the

mere negligence of Runyan, resulting in injury to the decedent, appellant would not ordinarily be liable. Of course, to this general rule there are exceptions, and the complaint before us seeks to allege facts creating an exception. The exception sought to be shown is that the servant Runyan was incompetent, and that as a result of his incompetency the decedent received the injuries which resulted in his death. In order that the complaint state a cause of action, it was necessary to allege therein, not only that Runyan was incompetent, that appellant knew of his incompetency, and that such incompetency was the cause of the negligent act or omission which brought about the injury, but also that decedent did not know of Runyan's incompetency, and further that the decedent was guilty of no negligence contributing to his own injury. All of these facts were necessary to the statement of a cause of action.

In the case of *Evansville, etc., R. R. Co.* v. *Duel*, 134 Ind. 156, the court says: "It follows that a complaint, in such an action as this, must allege not only the violation of the master's duties but such performance of his own [the servant's] duties as that it may appear that he has not been negligent in contributing to his injury, and that he has not assumed the risks incident to the defects or want of skill of which he complains," and in *Ames, Admr.*, v. *Lake Shore, etc., R. W. Co.*, 135 Ind. 363, that "In actions of this character, therefore, it is necessary, not only to allege freedom from contributory negligence, but to allege such facts as show that the injury was not the result of some hazard of the service assumed by the servant," and further that this latter requirement is "usually met by an allegation that the defect or want of skill complained of was unknown to the person injured."

Upon the same principle rest the decisions in *Lake*

*Shore, etc., R. W. Co.* v. *Stupak,* 108 Ind. 1; *Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75; *Louisville, etc., R. W. Co.* v *Sandford, Admx.,* 117 Ind. 265; *Louisville, etc., R. W. Co.* v. *Corps,* 124 Ind. 427; *Ohio, etc., R. W. Co.* v. *Dunn,* 138 Ind. 18.

In was incumbent upon appellee, in order that he recover, to show first, that the servant, Runyan, was incompetent; second, that some negligent act or omission, which was the result of his incompetency, caused the injury which resulted in Robinson's death; third, that the appellant knew that Runyan was incompetent for the service for which he was employed, and was required by appellant to do; fourth, that the decedent, Robinson, did not know of Runyan's incompetency; and, fifth, that Robinson was guilty of no negligence contributing to his injury.

In the case of *Ohio, etc., R. W. Co.* v. *Dunn, supra,* which was an action to recover damages for personal injuries received on account of the incompetency or unskillfulness of a co-employe, the court says: "There is no question but that the appellee and the engineer were fellow-servants. The burden, therefore, rested upon the appellee, as to this element of the case, to establish, by a preponderance of the evidence, that the engineer was incompetent; that the injuries were caused or aggravated by the incompetency of the engineer; the absence of contributory negligence and of knowledge of such incompetency, as well as the presence of knowledge, by the company, of such incompetency."

I am of the opinion that the evidence in this case wholly fails to establish the facts necessary to entitle appellee to recover.

The only evidence relied upon to prove that the servant Runyan was incompetent to perform the duties of "hostler" in running engines into and out of the round-

house was that he was not an engineer, and that, in order to fit a man for that kind of work, he should have experience as a fireman the length of time which he should serve as such,. before he would be competent, depending much upon the man. It also appears that Runyan was employed as a "wiper," but that on several occasions he had run engines in and out of their stalls in the round-house. That on this occasion he handled the engine in a proper manner, and just as an engineer would have handled it, is undisputed, for the witness Patrick Welch, an engineer, who was an eye witness to Runyan's manner of operating the engine, and the only person who testified concerning the way in which it was operated, said it was operated "all right, I should think it was managed as well as I could do it." * * * "I didn't see anything wrong with the engine. I couldn't have moved it any different under the circumstances."

While it may be true that, ordinarily, experience is necessary to qualify persons for the performance of certain duties requiring special skill, yet if a man without such experience is able to, and does, perform the duties as well as those who have had the previous experience; he is not incompetent simply because he has not had the previous experience. ·Because it usually requires experience to qualify persons for the performance of certain duties, it cannot be said that a person who performs the duties without such previous experience is incompetent simply because he had not had that experience. Incompetency means inability to do or perform the work undertaken.

An incompetent servant is one who has not the required abilities necessary to do properly that which is required of him. Whether this inability is the result of lack of experience, because not endowed with such

qualifications by nature, or because of the impairment of natural or acquired abilities, it is the same.

But before the master can be held answerable for the incompetency of a servant, it must be shown either that he knew of such incompetency or that he did not exercise reasonable care in the selection of such servant. *Cincinnati, etc., R. R. Co.* v. *Madden,* 134 Ind. 462.

There is nothing in the evidence to show that the appellant knew that Runyan was incompetent, neither is there anything to show that it did not use reasonable care in his selection.

If Runyan was incompetent, it is to be inferred simply from the fact that he was not a regular engineer, and had had no previous experience in operating engines, except what he had acquired while working for appellant in running the engines into and out of the round house, before the time when he started to back the engine, resulting in decedent's injury.

However inexperienced or incompetent Runyan may have been, it is undisputed that on this occasion, at least, he started, operated and moved the engine as well as it was possible for an experienced and competent engineer to have done. If he started and operated the engine skillfully and properly, the fact that he had no previous experience is not sufficient to prove him to have been incompetent.

While it is admitted that Runyan did not blow the whistle or ring the bell before he started the engine, does that fact show that he was incompetent? or was this omission on his part simply such negligence as might have occurred with the most experienced and competent engineer?

It requires neither skill nor experience to ring the bell or blow the whistle of a locomotive engine. Any child ten years of age, except it be physically disabled,

is capable of doing both.   It cannot be claimed, there-fore, that Runyan was incompetent, either to ring the bell or blow the whistle.   If he was competent, then the fact that he did not do so must be attributed to his over-sight or forgetfulness.

That Runyan failed to ring the bell and blow the whistle on this occasion are the only facts proven to show negligence.   And it is settled that proof of one single instance of negligent conduct is not sufficient even to show that a servant is a negligent servant.

The charge in the complaint is negligence on the part of the appellant, and the burden rests upon appellee to prove it, for negligence on the part of the master is not presumed.

In *Louisville, etc., R. W. Co.* v. *Sandford, Admr., supra,* it is said, "All the authorities agree that negli-gence on the part of the employer is not to be presumed, and that it rests on the plaintiff to aver and prove every fact essential to the existence of actionable negligence. *Riest* v. *City of Goshen,* 42 Ind. 339 ; *Pennsylvania Co.* v. *Whitcomb, Admr.,* 111 Ind. 212 ; *Summerhays* v. *Kansas Pacific R. W. Co.,* 2 Col. 484 ; *Mobile, etc., R. R. Co.* v. *Thomas,* 42 Ala. 672 ; *State* v. *Philadelphia, etc., R. R. Co.,* 60 Md. 555 ; *Davis* v. *Detroit, etc., R. R. Co.,* 20 Mich. 105 ; *The Gladiolus,* 21 Fed. Rep., 417 ; *Cummings* v. *Nat'l Furnace Co.,* 60 Wis. 603 ; *Belair* v. *Chicago, etc., R. R. Co.,* 43 Iowa 662."

If the bare fact that on this occasion Runyan failed to blow the whistle or ring the bell, is not sufficient to prove him a negligent servant, much less is it sufficient to prove him an incompetent or unskilled servant, or that appellant was negligent in employing him.

Neither incompentency nor unskillfulness of a co-ser-vant will be presumed in order to make either available as a ground of action, they must be proved, and merely

showing the manner in which he did the particular act complained of, is not generally of itself sufficient to warrant such inference.    Wood Master and Servant, section 419.

The failure to blow the whistle or ring the bell, if it can be said that they were proper or necessary, which I do not pretend to decide, was nothing but an oversight on Runyan's part, and they were not omitted by him either because he did not know how, or because it required skill or experience to enable him to do them.    If it did not require skill or experience to qualify him to do these things, then their omission cannot be charged to his want of skill or experience.

The authorities are agreed that to enable a servant to recover from his master, for injuries received through the instrumentality of a fellow-servant, he is required not only to show that such fellow-servant was incompetent and that the master was guilty of negligence in employing him, but that the injury was the proximate result of the lack of qualification of such fellow-servant. *Wright* v. *New York Cent. R. R. Co.*, 25 N. Y. 562; *Kersey* v. *Kansas City, etc., R. R. Co.*, 79 Mo. 362; *Ohio, etc., R. W. Co.* v. *Dunn, supra;* McKinney Fellow-servants, section 79; Am. and Eng. Encyc. of Law, Vol. 7, page 843.

But if the injured servant knew of the incompetency of his fellow-servant, or had equal opportunities with the master to obtain information thereof, he cannot recover.    *Ames, Admr.,* v. *Lake Shore, etc., R. W. Co., supra,* and cases cited.

It is undisputed that Runyan and the decedent, Robinson, were fellow-servants together, and had been for several months prior to the happening of the accident which resulted in the latter's death.    No person was in a better position to learn, and none knew better than

Robinson of the habit of Runyan to take the engines in and out of the round-house, and of his ability to do so properly.    It was he who opened the doors to permit Runyan to take the engine out on this occasion.

Under these facts, even if it can be said that Runyan was incompetent, the law assumes that Robinson knew it, and continuing to work with him, assumed that as a risk incident to his employment.

There is no evidence, therefore, in my opinion to sustain the verdict, and for that reason I think a rehearing should be granted.

Filed November 26, 1895.